UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JERRY GOODYEAR on Behalf of Himself and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>ESTES EXPRESS LINES, INC.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)   1:06-cv-863- JDT-TAB<br>)<br>)<br>)<br>)<br>) |

**Entry on Motion for Attorney's Fees and Costs (Doc. No. 49)**[1]

In this class action lawsuit brought pursuant to the Indiana Wage Payment Statute, Ind. Code § 22–2-5-1, class counsel Ronald E. Weldy now seeks an award of attorney's fees pursuant to Federal Rules of Civil Procedure 23(h) and 54(d)(2). On June 14, 2007, the court conditionally certified a class (the "Class") of former and current employees of Defendant Estes Express Lines, Inc. ("Estes") and preliminarily approved a settlement agreement (the "Settlement Agreement") submitted by the parties through their respective counsel. Pursuant to the Settlement Agreement, 112 Class members timely submitted claims, and Estes' payout obligation on those claims totals $113,900. Mr. Weldy now moves for an award of the following: (1) $50,000 in statutory attorney's fees, as agreed to by Estes and Mr. Weldy; (2) $156,750 pursuant

---

[1] This Entry is a matter of public record and will be made available on the court's web site. However, the discussion contained herein is not sufficiently novel to justify commercial publication.

to the common fund doctrine; and (3) $221.13 in costs.  All told, Mr. Weldy seeks $206,971.13 in attorney's fees and costs, of which $206,750 would consist solely of attorney's fees.  Under Rule 23(h), this court may approve – in a certified class action – an award of "*reasonable* attorney fees and nontaxable costs authorized by law or by agreement of the parties."  Fed. R. Civ. P. 23(h) (emphasis added).[2]

I.     **Background**

Although this case originally involved additional claims, the Settlement Agreement is based solely upon the Class's claim that Estes violated the "Ten Day Rule" of the Indiana Wage Payment Statute, Ind. Code § 22-2-5-1, by paying Class members (Estes employees) their wages 11-12 calendar days following the conclusion of each pay period.  (Mem. Supp. Mot. 5.)  At the time this lawsuit began, it was unclear whether the Statute's Ten Day Rule referenced business or calendar days; because Class members had received their wages within 10 business – but not calendar – days, this uncertainty helped to facilitate the settlement of this action. The Wage Payment Statute includes a liquidated damages provision requiring a non-compliant employer to pay the employee 10% of the amount due per day for each day beyond the ten-day window.  See Ind. Code § 22-2-5-2.  In addition, the Statute includes a nondiscretionary fee-shifting provision, indicating that in the event of a recovery, "the court shall tax and assess as costs . . . a reasonable fee for the plaintiff's attorney or attorneys."  *Id.*

---

[2]  Rule 23 has been amended (effective December 1, 2007) since the filing of the motion presently under consideration.  Although the amendment is "stylistic only" and does not affect the substance of the Rule, the relevant language now reads: "reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."

On November 6, 2006, at a conference presided over by Magistrate Judge Tim A. Baker, the parties agreed to the basic outline of the Settlement Agreement.  The hand-written memorialization of this agreement included the following relevant particulars:  (1) a "maximum combined amount" (with "maximum" underscored for emphasis in the original document) of $475,020, to be divided among 3 categories of plaintiffs in the purported class; (2) payment to the named plaintiff in the amount of $11,000, less attorney's fees, for settlement of all his individual claims; (3) an attorney's fee to be determined by the court (presumably pursuant to Rule 23(h)), with Mr. Weldy providing Estes with billable hours to date and an updated figure when submitting the fee petition; and (4) dismissal of the "Lunch Break Class" (an entirely separate claim) without prejudice.  (Mem. Supp. Mot. Ex. A, Doc. No. 50-2.)  The hand-written document memorializing this agreement was signed by an Estes representative, Estes' counsel, Mr. Weldy, and Mr. Goodyear.  (*Id.*)

The parties filed their Joint Motion for Conditional Certification of Settlement Class and Preliminary Approval of Settlement Agreement, Doc. No. 41, on April 27, 2007, the same day that the Indiana Supreme Court resolved the ambiguity in the Ten Day Rule in a manner favorable to Estes; the court held that "days" referenced business, not calendar, days.  *See Naugle v. Beech Grove City Schs.*, 864 N.E.2d 1058, 1060-61 (Ind. 2007) ("We hold that the term 'days' as used in the Wage Payment Statute refers to business days and not calendar days.").  Although the *Naugle* decision would have rendered the Class's Ten Day Rule claim meritless, Estes makes no

3

attempt to escape its pre-*Naugle* settlement of this matter.[3]  However, Estes does contest the reasonableness of Mr. Weldy's request for attorney's fees, contending that the fee request is contrary to applicable law regarding the "common fund doctrine," inconsistent with Weldy's prior representations to defense counsel, and violates the terms of the Settlement Agreement.

The crux of the current dispute over Mr. Weldy's request for attorney's fees is the applicability, or lack thereof, of the common fund doctrine.  Estes apparently agreed to pay Mr. Weldy $50,000 in "statutory" attorney's fees – pursuant to the nondiscretionary fee-shifting provision of the Wage Payment Statute – as part of the Settlement Agreement.  A faxed letter from Estes' counsel to Mr. Weldy, dated April 26, 2007, expressed that understanding:

> Estes and Plaintiff's counsel has [sic] agreed that Estes will pay the amount of $50,000 to you in full compensation for any and all fees associated with your representation of Goodyear and the class in this case.  A payment will be made regardless of whether the court awards you any type of further enhancement or contingent fee-based compensation and regardless of the amount of time that you put into the case.

(Mem. Supp. Mot. Ex. B., Doc. No. 50-3.)  The letter goes on to discuss Mr. Weldy's intention to seek additional fees from the so-called "common fund":

> You intend on filing a motion which would seek some type of contingency fee award which will be paid out of the common fund of $475,000 for any

---

[3] It should be noted that Estes and its counsel exhibited commendable good faith in honoring this settlement agreement, despite the *Naugle* decision.  When asked at the Fairness Hearing about Estes' intention to stand by the agreement in light of the *Naugle* decision, Estes' counsel reaffirmed Estes' commitment to the agreement, explaining, "It's the right thing to do."

> amount of the fee award over the $50,000.  In other words, Estes *will not be responsible* for any fees awarded to you in this case over the $50,000 that it will pay upon the conclusion of the action.

(*Id.*) (emphasis added).  Although Estes acknowledged Mr. Weldy's intention to seek court approval for recovery of additional attorney's fees on a common fund theory, it also clearly stated that no further fees (beyond the $50,000), if approved, would be paid directly by Estes.

The parties' Memorandum in Support of Joint Motion for Conditional Certification of Settlement Class and Preliminary Approval of Settlement Agreement – signed by both parties and presented as an authoritative expression of their mutual understanding of the Settlement Agreement[4] – provides a description of the parties' agreement concerning attorney's fees consistent with Estes' letter to Mr. Weldy.  First, the memorandum describes the three categories of Class members and the awards available to each under the settlement:  (1) $300 for each employee with 0-6 months of service during the class period; (2) $800 for each employee with 6-15 months of service during the class period; and (3) $1,200 for each employee with more than 15 months of service during the class period. (Mem. Supp. Joint Mot., Doc. No. 42 at 15.)  The memorandum describes the payment to each employee as "exclusive of any attorney fee award that may be allowed by the Court," and further explains:

> Class counsel intends to apply for a percentage of the proposed maximum settlement amount as a contingency fee award. Any such award on a

---

[4] The Joint Motion expressly requests that the court approve the settlement "as explained" in the Memorandum in Support.  (Joint Mot. for Conditional Certification, Doc. No. 41.)

5

> contingency fee basis *would reduce the payment per class member* on a pro rata basis.  Estes *has agreed and will pay* Class Counsel fees based on an enhanced hourly lodestar basis in the amount of Fifty Thousand Dollars ($50,000), and not to exceed that amount.  This is *the total amount of fees Estes must pay Class Counsel* or the Settlement Class in this case and any additional fees awarded over that amount must be recovered from the proposed maximum settlement fund of $475,020.

(*Id.*) (emphasis added).  It is worth noting again that this memorandum was submitted and signed by Mr. Weldy and Estes' counsel/representative, and was intended to memorialize the parties' agreement in order to facilitate court approval of the Settlement Agreement.  The memorandum describes the amounts available to those Class members who submit claims, but does not provide for the creation of any separate fund or payment into escrow to provide for satisfaction of these claims.

At the Fairness Hearing on October 26, 2007, Estes' counsel reported that of the 516 potential Class members, only 112 had filed claims, resulting in a total (eventual) payout to those claimants in the amount of $112,700.  (Resp. Opp'n Mot. Ex. M, Doc. No. 53-14 at 3.)  Estes later revised that total payout figure upward somewhat to $113,900.  (Resp. Opp'n Mot. 9.)   At the Fairness Hearing, Estes' counsel reiterated the Defendant's understanding that:  (1) Estes would pay Mr. Weldy no more than the agreed-upon $50,000 in statutory attorney's fees; (2) the $475,020 figure was intended only as an absolute ceiling on the Class's recovery, and was not intended to represent the total dollar value of the settlement; and (3) any "common fund" or "contingency" recovery sought by Mr. Weldy would come from – and thereby reduce – the payments actually made to individual claimants, rather than coming directly from Estes. (Resp. Opp'n Mot. Ex. M, Doc. No. 53-14 at 3-5, 8, 10.)  Mr. Weldy affirmed his intention to

seek additional attorney's fees on a common fund theory, but did not clearly indicate whether he intended to seek those fees as a pro rata diminution of the claimants' individual recoveries or as a direct payment from Estes.  (*Id.* 7, 10.)

Estes now characterizes the $50,000 figure as merely an agreed-upon "maximum," rather than an agreed-upon payment figure, but concedes that it agreed to pay Mr. Weldy statutory attorney's fees up to that amount.  (Resp. Opp'n Mot. 32) ("Estes stands ready to pay Class Counsel the $50,000 as full compensation.")  In addition, Estes does not oppose Mr. Weldy's request for $221.13 in costs.  Rather, Estes' opposition is focused upon Mr. Weldy's request for an additional $156,750 in attorney's fees pursuant to the common fund doctrine.

First, without conceding the existence of a "common fund" in this case, Estes argues that any true common fund recovery of attorney's fees could only be realized through a pro rata diminution of the Class members' individual recoveries, rather than a direct payment from Estes.  In addition, Estes argues that Mr. Weldy's common fund request is improperly based on the settlement "ceiling" of $475,020, rather than the amount – $113,900 – actually recovered by Class members.  Further, Estes argues that Mr. Weldy is not entitled to any common fund award of attorney's fees, because he will receive an agreed-upon award of fees pursuant to the statutory fee-shifting provision, and he is entitled to only one reasonable award of attorney's fees.  The court will address these arguments, as well as Mr. Weldy's arguments, below.  In addition, the court will fulfill its responsibility to independently evaluate any award of attorney's fees in order to ensure that such fees are "fair and proper whether the fees come from a

common fund or are otherwise paid." Fed. R. Civ. P. 23(h) advisory committee notes.

## II.   Discussion

Estes has agreed to pay Mr. Weldy $50,000 in attorney's fees pursuant to the fee-shifting provision of the Indiana Wage Payment Statute.[5] This figure is based on Mr. Weldy's lodestar figure and includes an enhancement to reflect the contingent nature of the lawsuit and the results obtained for the Class.  Mr. Weldy seeks not only that $50,000, but also a common fund recovery based on a percentage of the maximum possible $475,020 recoverable – rather than the $113,900 actually recovered – by Class members.  Although the Settlement Agreement contemplates that Mr. Weldy may seek such fees from the court, it does not provide that he is entitled to receive them. Based on these fee requests, the court must conduct two separate inquiries – first, the court must determine whether the $50,000 in agreed-upon statutory fees constitutes a reasonable award of attorney's fees.  Second, the court must determine whether Mr. Weldy is entitled to any additional award of fees based on a common fund theory.  This latter inquiry involves threshold questions of whether a common fund even existed, and, if so, whether Mr. Weldy is seeking fees from the appropriate source – the common fund – rather than Estes.

---

[5] Estes' recent characterization of the $50,000 figure as a mere "maximum" rather than an agreed-upon payment figure is belied by the parties' earlier memorandum in support of their joint motion, which was signed by both parties and presented as an authoritative explanation of the Settlement Agreement.  In addition, the faxed letter from Estes' counsel to Mr. Weldy that immediately preceded the filing of the joint motion clearly indicates Estes' intention to pay Mr. Weldy $50,000 to release Estes' liability for any statutory (or other) attorney's fees. Therefore, the court concludes that this was an agreed-upon payment figure, rather than a mere ceiling on payments from Estes to Mr. Weldy.

### A. Reasonableness of $50,000 Award of Statutory Attorney's Fees

Rule 23(h) allows the court, in a case certified as a class action, to award reasonable attorney's fees authorized either "by law or by agreement of the parties." Therefore, the agreement between the parties authorizing the payment of $50,000 in statutory attorney's fees provides a starting point for this discussion; the question is whether this award of attorney's fees, authorized "by agreement of the parties," satisfies the reasonableness requirement of Rule 23(h).

If the court were called upon – without the benefit of any agreed-upon figure from the parties – to determine a reasonable fee award pursuant to the fee-shifting provision of the Indiana Wage Payment Statute, the task at hand would be somewhat different. In such a scenario, the court would apply Indiana law in order to determine, in the first instance, a reasonable fee award under the applicable fee-shifting provision, Ind. Code § 22-2-5-2. However, because the $50,000 award of "statutory" fees is authorized by "agreement of the parties," Fed. R. Civ. P. 23(h), and because the party who will bear the cost – Estes – has consented to this award, it appears to be presumptively reasonable. In addition, it is significant that no Class member's recovery will be diminished by this award, and no Class member has objected to the proposed settlement. Both of these facts support a finding of reasonableness.

In addition, the award appears to be reasonable under Indiana law, which directs the court to consider – among other factors – "the amount involved and the results obtained," "the fee customarily charged in the locality for similar legal services," as well

9

as "whether the fee is fixed or contingent" in assessing the reasonableness of an award of attorney's fees. *Daimler Chrysler Corp. v. Franklin*, 814 N.E.2d 281, 287-88 (Ind. App. 2004) (internal quotations omitted) (citing Indiana's Rule of Professional Conduct 1.5 as guiding the evaluation of the reasonableness of an award of attorney's fees); *cf.* Fed. R. Civ. P. 23(h) advisory committee notes (noting that courts assessing reasonableness have looked to a variety of factors, including "the result actually achieved for class members, a basic consideration in any case in which fees are sought on the basis of a benefit achieved for class members").  Given that Mr. Weldy undertook representation in this case on a contingency basis and without a retainer, it seems appropriate to compare the $50,000 figure to the results actually obtained for Class members in assessing reasonableness.  If the $50,000 fee is added to the $113,900 actually recovered by Class members, Estes' total payout in this case would be $163,900.  Mr. Weldy's $50,000 in attorney fees would then represent approximately 30.5% of the total settlement amount; such a fee is well within the reasonable range of contingency fees.  Therefore, although Estes has correctly pointed out that the court is not obligated to honor the parties' agreement regarding attorney's fees, there appears to be no reason why honoring the parties' agreement here would be unreasonable.

In summary, the parties' agreement that Mr. Weldy should receive $50,000 in statutory attorney's fees appears to be "reasonable" for purposes of Rule 23(h).  This award reflects a reasonable percentage of the settlement achieved by Mr. Weldy on behalf of the Class, and there is nothing to suggest unfairness to either Estes or the Class.  Therefore, the court will uphold the parties' agreement in this respect and grant

Mr. Weldy's motion to the extent that it seeks the court's approval for this award.

### B. Applicability of Common Fund Doctrine

Mr. Weldy also seeks, under the common fund doctrine, a percentage of the maximum amount that the Class could have recovered from Estes in this case. He contends that the $475,020 maximum payout figure constitutes a "common fund," that he is entitled to 33% of that fund – $156,750 – and that this payment should come directly from Estes, rather than as a pro rata reduction of Class members' recoveries. Because Mr. Weldy's request is based upon a misapprehension of the common fund doctrine and is contrary to the terms of the Settlement Agreement, which restricts Estes' direct liability for attorney's fees to $50,000, this request for a common fund recovery will be denied.

First, Mr. Weldy's common fund request is improper because it seeks a recovery of fees from the wrong party – the Defendant, Estes. A bit of background on the common fund doctrine is helpful in explaining this conclusion. The common fund doctrine is an equitable, judicially created exception to the general rule – the "American Rule" – in U.S. lawsuits that each party bears its own expenses, regardless of which party prevails. *See Florin v. Nationsbank of Ga.*, 34 F.3d 560, 562-63 (7th Cir. 1994). Statutory fee-shifting provisions, such as the one in the Indiana Wage Payment Statute, constitute another exception to the American Rule, in which defendants are required to bear the plaintiff's costs of litigation. *Id.* These two exceptions to the American Rule are distinct in purpose and operation. While statutory fee-shifting provisions are

intended to "encourage[] the private prosecution of certain favored actions," the common fund doctrine is "based on the notion that not one plaintiff, but all those who have benefitted from litigation should share in its costs." *Id.* (internal quotations omitted). Therefore, whereas a statutory fee-shifting provision operates to require the defendant to bear the plaintiff's attorney's fees, the common fund doctrine operates to distribute the cost of attorney's fees amongst those benefitting – e.g., class members in a class action lawsuit – from the litigation. *See id.*; *see also Sutton v. Bernard*, 504 F.3d 688, 693 (7th Cir. 2007) (explaining that the source of attorney's fees is a "key difference between these two fee recovery schemes" and that "in statutory fee-shifting cases, the prevailing party . . . recovers the attorneys' fee from the defendant, whereas in a common fund case, the court awards the plaintiffs' attorneys' fees from the fund").

The Seventh Circuit has explained the prototypical "common fund" recovery in these terms:

> When a case results in the creation of a common fund for the benefit of the plaintiff class, the common fund doctrine allows plaintiffs' attorneys to petition the court to recover its fees out of the fund. In such a case, the defendant typically pays a specific sum into court, in exchange for a release of its liability. The court then determines the amount of attorney's fees that plaintiffs' counsel may recover from this fund, thereby diminishing the amount of money that ultimately will be distributed to the class. The common fund doctrine is based on the notion that not one but all those who have benefitted from litigation should share its costs.

*Florin*, 34 F.3d at 563 (internal citations and quotations omitted). As the court's explanation makes clear, a common fund recovery involves a diminution of some fund created to satisfy the claims of the plaintiffs, not a direct payment from the defendant to

the plaintiffs' attorneys.  This method of payment reflects the purpose of the common fund doctrine – to distribute the costs of the litigation among those who have benefitted. Therefore, Mr. Weldy's request for a "common fund" recovery directly from Estes – in addition to the recoveries of individual Class members, rather than as a pro rata diminution of their individual recoveries – is contrary to both the purpose and practical operation of the common fund doctrine.[6]

In addition, Mr. Weldy's request to recover additional fees directly from Estes is contrary to the terms of the Settlement Agreement.  As explained in the parties' Memorandum in Support of their Joint Motion, Estes' direct liability for attorney's fees was to be strictly limited to the $50,000 in statutory attorney's fees, and any additional fees were to be recovered through the pro rata diminution of the Class members' recoveries.  Mr. Weldy's agreement to these terms forecloses his current argument that Estes should pay him an additional $156,750 in attorney's fees.

Finally, it is worth noting that if a "common fund" existed at all in this case, it existed only in the form of the $113,900 paid to those Class members who submitted claims; the $475,020 maximum payout figure was merely a hypothetical maximum, not

---

[6] Although a case initiated pursuant to a statute with a fee-shifting provision may result in a common fund recovery of attorney's fees, such a case would involve the creation of "a settlement fund . . . in exchange for release of the defendant's liability *both* for damages *and* for statutory attorney's fees." Skelton v. General Motors Corp., 860 F.2d 250, 256 (7th Cir. 1988) (emphasis added); *see also Florin*, 35 F.3d at 563 (applying this principle).  This case involves no such facts; rather, the parties' settlement contemplated the *separate payment* of attorney's fees and Class members' individual awards, rendering the common fund doctrine inapplicable. *Cf. Evans v. City of Evanston*, 941 F.2d 473, 479 (7th Cir. 1991) (concluding that, where plaintiff's attorney had been awarded fees pursuant to a statutory fee-shifting provision, district court correctly ruled "that it was unnecessary to allow *both* a recovery from the defendants and the common fund").

13

a true common fund.  In this respect, the facts of this case are analogous to those in *Strong v. Bellsouth Telecommunications Inc.*, 137 F.3d 844 (5th Cir. 1998), in which the court upheld the district court's rejection of the $64 million common fund figure sought by plaintiff's counsel.  Because the *Strong* settlement did not involve the payment of a lump-sum judgment into court or the payment of some amount into escrow – i.e., a traditional common fund – but instead was contingent on the decisions of individual class members to take advantage of available benefits under the settlement, the court affirmed the district court's decision to consider only the actual amounts claimed in awarding attorney's fees.  *Strong*, 137 F.3d at 852-53 (explaining that "because of the absence of any fund and because the value of the settlement was contingent on class members' desire to continue the plan as well as their eligibility for the credit," the district court did not abuse its discretion "by not basing the attorneys' fee award on the $64 million 'common fund' value").  Similarly, Estes' maximum potential liability to Class members in this case did not represent a common fund.  If a common fund existed at all, it could be valued only in terms of the total amount actually claimed by Class members, and Mr. Weldy will already recover a reasonable percentage of that figure in the form of "statutory" attorney's fees agreed to by the parties.

In summary, Mr. Weldy improperly seeks a common fund recovery in the form of payment directly from the Defendant, rather than as a pro rata diminution of Class members' individual recoveries.  Mr. Weldy's common fund request is also incorrectly based on the $475,020 maximum payout figure, rather than the amounts actually paid to Class members.  Finally, Mr. Weldy's recovery of attorney's fees pursuant to the

statutory fee-shifting provision of the Indiana Wage Payment Statue eliminates the need for a common fund recovery in this case.  Any such additional recovery would needlessly reduce individual Class members' recoveries and would therefore be unreasonable.

### III.     Costs

Estes does not oppose Mr. Weldy's request for reimbursement of $221.13 in costs, including costs incurred for copying, postage, parking, and filing fees.  Given the relatively small amount involved and Estes' consent to this award, the court will award Mr. Weldy $221.13 in costs.

### IV.     Findings of Fact and Conclusions of Law

#### A.     Findings of Fact

1)  The settlement of the Class's claim, pursuant to the Ten Day Rule of the Indiana Wage Payment Statute, will result in a total payout of $113,900 by Estes to the Class members.

2)  As part of the parties' Settlement Agreement submitted for this court's approval, Estes agreed to pay Mr. Weldy $50,000 in statutory attorney's fees in exchange for a release of liability for any additional attorney's fees.

3) Mr. Weldy has incurred $221.13 in costs in this matter for copying, postage, parking, and filing fees.

### B.     Conclusions of Law

1) The $50,000 award of statutory attorney's fees to Mr. Weldy under the terms of the Settlement Agreement constitutes a fair and reasonable award of attorney's fees. This conclusion is supported by applicable Indiana law governing the award of attorney's fees.

2) Mr. Weldy is not entitled to a common fund recovery of attorney's fees in this case.  His request for such a recovery improperly seeks payment directly from Estes, rather than as a pro rata reduction of individual Class members' recoveries.  In addition, his request is incorrectly based upon the $475,020 maximum possible recovery for Class members under the Settlement Agreement, rather than the $113,900 actually claimed by Class members.  Given Mr. Weldy's recovery of $50,000 in statutory attorney's fees, any additional award of fees would be unreasonable.

3) Mr. Weldy is entitled to recover $221.13 in reasonable costs incurred in litigating this matter.

### V.     Conclusion

For the foregoing reasons, Mr. Weldy's Motion for Attorney Fees and Costs is **GRANTED** in part and **DENIED** in part.  Mr. Weldy will be awarded $50,000.00 in

statutory attorney fees as agreed to by the parties, and he will also be awarded $221.13 in reasonable costs, subject to final approval of the Settlement Agreement. However, his request for $156,750.00, pursuant to the common fund doctrine, is denied.

This award of attorney's fees remains subject to the court's final approval of the Settlement Agreement pursuant to Federal Rule of Civil Procedure 23(e). Upon motion of the parties, the court will take up the matter of final approval of the Settlement Agreement. The parties are encouraged to submit proposed findings and conclusions in conjunction with such a motion for final approval.

ALL OF WHICH IS ENTERED this 10th day of March 2008.

_____
John Daniel Tinder, Judge
Sitting by Designation

Copies to:

| | |
|---|---|
| David Dreifus<br>POYNER & SPRUILL LLP<br>ddreifus@poyners.com | Ronald E. Weldy<br>WELDY & ASSOCIATES<br>weldy@weldylaw.com |
| David D. Robinson<br>SCOPELITIS GARVIN LIGHT & HANSON<br>drobinson@scopelitis.com | David Lester Woodard<br>POYNER & SPRUILL LLP<br>dwoodard@poyners.com |
| David Lee Terry<br>POYNER & SPRUILL LLP<br>dterry@poynerspruill.com | |